OPINION
Defendant-appellant Adjuane Woods appeals his conviction and sentence from the Licking Municipal Court on one count of domestic violence in violation of R.C. 2919.25. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 17, 2000, appellant was charged with one count of domestic violence in violation of R.C. 2919.25, a misdemeanor of the first degree. At his arraignment the next day, appellant entered a plea of not guilty to the charge.
Subsequently, a jury trial commenced on September 11, 2000. The following evidence was adduced at trial.
Appellant is the father of Lesley Gaumier's daughter, who shares his last name. On July 16, 2000, at approximately 3:00 a.m., Gaumier called appellant from a pay phone located across the street from the UDF in Newark, Ohio, to ask him for money to buy their daughter some shoes. At trial, Gaumier testified that when appellant arrived at the phone booth, "[w]e asked him for the money and we started arguing and he hit me." Trial Transcript at 10. According to Gaumier, appellant punched her in the face with his fist, causing her to fall and hit her face on a car. However, Gaumier was unable to recall which side of her face was struck by appellant.
Shortly thereafter, a car load of "girls" pulled up and began kicking and hitting Gaumier. Trial Transcript at 10. Earlier in the evening, Gaumier had seen appellant and some of the "girls" at a bar. According to Gaumier, while at the bar, the "girls", who included the sister of appellant's girlfriend, "were saying that they was gonna get me." Trial Transcript at 14. As a result of the assault, Gaumier sustained injuries to her eye and "bruises everywhere." Trial Transcript at 10. Gaumier testified that, prior to hitting her, appellant had telephoned the girls and told them to "come there and beat me up." Trial Transcript at 23. Photographs of Gaumier's injuries were introduced at trial and admitted into evidence.
The next witness to testify at trial was Sammy Ray Shaneyfelt. Shaneyfelt testified that, between 2:50 a.m. and 3:00 a.m., on July 16, 2000, he "seen a black gentleman took a swing at a white woman" in the parking lot across from the UDF. Trial Transcript at 28.
Megan Taylor, Gaumier's friend, also testified at trial. Taylor testified that Gaumier and appellant were arguing when "all of a sudden he [appellant] just burst out of the car." Trial Transcript at 36. When asked what happened next, Taylor testified that the next thing she knew, Gaumier's "body hit up against the car pretty hard." Id. However, Taylor admitted that she did not actually see appellant strike Gaumier. Taylor further testified that, after several cars pulled in near Gaumier's car, two girls got out of one of the cars and started beating Gaumier. While Taylor testified that Gaumier did not have any injuries prior to the incident, according to Taylor, after the incident, Gaumier's face was "swelling up" and was "huge". Trial Transcript at 37.
At the conclusion of the evidence and the end of deliberations, the jury, on September 11, 2000, returned with a verdict finding appellant guilty of one count of domestic violence. Pursuant to a Journal Entry filed the same day, the trial court sentenced appellant to 180 days in jail and ordered appellant to pay a fine in the amount of $400.00.
It is from the trial court's September 11, 2000, Journal Entry that appellant prosecutes his appeal, raising the following assignments of error:
 I THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
 II THE STATE OF OHIO FAILED TO ESTABLISH THAT THE ALLEGED VICTIM WAS A "FAMILY OR HOUSEHOLD MEMBER" AND, THUS, FAILED TO PROVE THE GUILT OF THE DEFENDANT-APPELLANT BEYOND A REASONABLE DOUBT.
 III THE CONVICTION OF THE DEFENDANT-APPELLANT IS NOT SUPPORTED BY THE EVIDENCE PRESENTED, SPECIFICALLY, THE STATE OF OHIO FAILED TO PRESENT EVIDENCE THAT MR. WOODS CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO THE ALLEGED VICTIM HEREIN.
For purposes of economy, we shall address appellant's assignments of error out of sequence.
 II, III
Appellant, in his second and third assignments of error, argues that his conviction for domestic violence was against the sufficiency of the evidence. Appellant specifically contends that there was insufficient evidence that Lesley Gaumier, the victim herein, was a "family or household member", and that there was insufficient evidence that appellant caused or attempted to cause physical harm to Gaumier. We, however, disagree.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus.
In the case sub judice, appellant was convicted of one count of domestic violence in violation of R.C. 2919.25. Such section states, in relevant part, as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
As is stated above, appellant maintains that there was insufficient evidence to prove that Lesley Gaumier was a "family or household member" since paternity was never established. A "family or household member" is defined in R.C. 2919.25(E)(1)(b) as including "[t]he natural parent of any child of whom the offender is the. . . . putative other natural parent." The Sixth Edition of Black's Law Dictionary defines putative father, which is not defined in the statute, as "[t]he alleged or reputed father of a child born out of wedlock."
Upon our review of the record, we find that there was sufficient evidence that appellant is the putative father of Lesley Gaumier's child and that, therefore, Lesley Gaumier was a "family or household member." At the September 11, 2000, trial in this matter, Gaumier testified that she previously had been in a relationship with appellant, that a daughter was born out of that relationship, and that her daughter has appellant's last name. In addition, Gaumier testified that there was no question in her mind that appellant was the father of her daughter and that there was no possibility anyone else could be the father. Based on the foregoing, we find that any rational trier of fact could have found that Gaumier was a "family or household member" as is defined under R.C. 2919.25(A).
Appellant further argues that his conviction for domestic violence is against the sufficiency of the evidence since there was no evidence that appellant caused or attempted to cause physical harm to Gaumier. According to appellant, "[a]t no time was evidence presented that would tend to establish that the alleged victim suffered any injury, illness or other physiological impairment, . . . due to the actions of Mr. Woods [appellant]."
At the trial in this matter, Gaumier testified as follows:
 Okay, what happened after he [appellant] came to, to the phone booth, or the phone area?
 A. We asked him for the money and we started arguing and he hit me.
Q. Where did he hit you at?
 A. In the face. I'm not sure which side. I can't remember, but — —
Q. Struck you in the face with, how did he strike you?
A. He punched me.
Q. With his fist?
A. Yeah.
Q. Okay, what happened after he struck you?
A. I fell and hit my face on the car.
Q. And then what happened?
 A. A car load of girls pulled up as I was getting up and they ran over and started kicking me and hitting me.
Q. Did you receive injuries from that assault?
A. Yes.
Q. What kind of injuries did you receive?
A. I had injuries to my eye.
Q. Any other injuries?
A. Just bruises everywhere.
 Q. And had you had those injuries prior to your contact to Mr. Woods on that date?
A. No.
Trial Transcript at 10. Gaumier further testified that the girls attacked her because "he [appellant] told them to." Trial Transcript at 22. Finally, as is stated above, Sammy Ray Shaneyfelt testified that he observed a "black gentleman" taking a swing at "a white woman." Photographs of Gaumier's injuries were admitted into evidence.
Based on the foregoing, we find that appellant's conviction for domestic violence was not against the sufficiency of the evidence. Construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant, through his own actions and his actions in directing the "girls" to attack Gaumier, knowingly caused or attempted to cause physical harm to Gaumier. Moreover, as is stated above, any rational trier of fact also could have found Gaumier was a "family or household member."
Appellant's second and third assignments of error are, therefore, overruled.
 I
Appellant, in his first assignment of error, claims that he was denied the effective assistance of trial counsel. Appellant specifically argues that trial counsel's failure to object to the introduction of photographs of the victim's injuries denied appellant his constitutional right to the effective assistance of trial counsel. According to appellant, the photographs, which showed the victim's face, were inadmissible evidence since:
 "[a]t no time did the alleged victim claim that the photographs depicted injuries caused by Mr. Woods [appellant]. In fact, the alleged victim could not even identify where Mr. Woods had struck her and at no time did she allege that Mr. Woods caused any physical harm or injury to her person. Further, the alleged victim testified that she was beaten by other parties subsequent to the alleged incident with Mr. Woods and prior to the photos being taken."
A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668;State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra, at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." Statev. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell
(1993), 506 U.S. 364. According to the United States Supreme Court and the Ohio Supreme Court, a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra, at 143, quoting Strickland, supra, at 697.
We find that trial counsel's failure to object to the admission of the photographs did not constitute ineffective assistance since counsel's performance did not fall below an objective standard of reasonable representation. As is stated above, Lesley Gaumier, the victim in this matter, testified that appellant struck her in the face, causing her to fall and hit her face on the car. She further testified that, after the initial assault by appellant, a group of "girls" kicked and hit her, causing injuries to her eye and bruising everywhere. According to Gaumier, the "girls" attacked her because appellant "told them to." Trial Transcript at 22. When questioned about the photographs, Gaumier testified that they fairly and accurately depicted the injuries that she received from the assault. Both Gaumier and her friend, Megan Taylor, testified that Gaumier did not have any injuries prior to the assault. Based on the foregoing, we find that the photographs of appellant's facial injuries were relevant and would have been admitted even had counsel objected to the same.
Assuming arguendo, that trial counsel's performance was deficient, we still find that appellant was not denied the effective assistance of trial counsel. Even absent the photographs, we find that any rational trier of fact, based on Gaumier's and Shaneyfelt's testimony, could have found appellant guilty of domestic violence. Since the admission of the photographs, therefore, did not affect the outcome of appellant's trial, we find that appellant was not prejudiced by the admission of the same.
Appellant's first assignment of error is, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs waived.
Edwards, J. Gwin, P, J. and Farmer, J. concur.